IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:12-cr-00310-3 |
| v. : | |
| : | (Judge Kane) |
| DAVID RAMSEY, : | |
| Defendant : | |

## MEMORANDUM

Before the Court is Defendant David Ramsey's motion to suppress evidence in the above-captioned action, which is set for trial on January 6, 2014. (Doc. No. 131.) The motion has been fully briefed. The Court held a hearing on Defendant's motion on October 9, 2013. For the reasons that follow, the Court will deny Defendant's motion.

**I. BACKGROUND**

On February 9, 2012, Detective Craig Fenstermacher of the York County District Attorney's Office, relying largely on information provided by a confidential informant, applied for a search warrant for 314 South George Street, 1st Floor, York, Pennsylvania. (Doc. No. 131-2.) According to the affidavit, Fenstermacher believed the informant was reliable because he had previously provided information to police in York that led to the arrest of a cocaine distributor and the seizure of cash. (Id.) The affidavit described the informant's admissions of marijuana use and distribution, and indicated that the informant had a two-year drug dealing relationship with Defendant. (Id.) It further indicated that the informant had made at least ten purchases of marijuana from Defendant inside 314 S. George Street in the last year and that he purchased marijuana from Defendant at that address within 72 hours prior to the application for the warrant. (Id.) While there, the informant observed additional marijuana that he believed was

1

packaged for sale. (Id.) The informant was taken to George Street, where he identified the residence as belonging to Defendant, and also identified a photograph of the Defendant, and the name of the Defendant's girlfriend, Iris Bordonada. (Id.)

Detective Fenstermacher checked the Pennsylvania criminal history records and determined that Defendant had pled guilty in York County to a drug distribution offense in 2000. (Doc. No. 131-2.) In addition, Fenstermacher checked Pennsylvania Department of Transportation records, which revealed that 314 S. South George Street was the residence of Bordonada, Defendant's girlfriend. (Id.) The affidavit also indicated that two other officers, Detective Nadzom and State Police Trooper Chris Keppel, were familiar with Defendant Ramsey, his nickname "Knuckles," and with his reputation for involvement with marijuana distribution in the York area. (Id.) Based on all of the above, Fenstermacher believed probable cause existed to search the residence, applied for and was granted a search warrant. (Id.)

The warrant identified the items to be seized as "Marijuana, a schedule I controlled substance, as well as any other controlled substances listed under Act #64 of 1972; any documentary evidence of, or proceeds from, the distribution, manufacture or possession of controlled substances; any paraphernalia associated with controlled substance use or distribution." (Doc. No. 131-1.) During the ensuing search, officers seized marijuana, two cellular telephones, and approximately 200 pages of documents and records. (Doc. No. 138 at 1.) According to the United States, a majority of the records seized relate to the Latin Kings organization, which is involved in marijuana trafficking in the York area. (Doc. No. 138 at 1-2.) Some of these documents were written in Spanish; the officers executing the warrant did not speak Spanish but nevertheless seized the documents. (Transcript at 23:13-25, 24:1-15.) Other

items seized included cellular telephones and medical records pertaining to Bordonada's children. (Transcript at 25:1-11, 27:1-15.) On August 23, 2013, Defendant David Ramsey moved the Court to suppress the items seized during the search. (Doc. No. 131.)

## II.     STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. When the search was pursuant to a warrant, the proponent of the motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated. United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (citing Rakas v. Illinois, 439 U.S. 128, 132 n.1 (1978)); see United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). The applicable standard of proof is the preponderance of the evidence standard. United States v. Matlock, 415 U.S. 164, 178 n.14 (1974). At a hearing on a motion to suppress, "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." United States v. Richardson, 501 F. Supp. 2d 724, 734 (W.D. Pa.2007) (citations omitted). Even when a violation of the Fourth Amendment occurred, the Court will not suppress evidence if the good faith exception to the exclusionary rule applies. United States v. Leon, 468 U.S. 897, 925 (1984). When determining whether the good faith exception applies, courts must ask whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization; if not, then the exception applies. United States v. Loy, 191 F.3d 360, 367 (3d Cir. 1999).

## III.    DISCUSSION

Defendant argues that the evidence seized during the search of 314 S. George Street, 1st

3

floor, York, Pennsylvania should be suppressed as fruits of an unconstitutional search because (1) no probable cause existed to support issuance of a warrant, (2) the warrant failed to describe with particularity the items to be seized, other than marijuana, and (3) the good faith exception does not apply in the face of these violations. (Doc. No. 132.) Defendant further argues that certain items seized were outside the scope of the warrant. (Doc. No. 143 at 7-8; Transcript at 36:4-20.) The Government maintains that probable cause existed in support of the warrant, and that the warrant described the items to be seized with adequate particularity. Should the Court find that the warrant is constitutionally defective, the government asserts that the good faith exception to the exclusionary rule should apply, and the Court should therefore deny the motion to suppress. (Doc. No. 138.)

### A.     Probable cause

Defendant asserts that no probable cause existed to support the warrant because the affidavit lacks details bolstering the reliability of the informant, lacks police corroboration of the informant's information, and is not sufficiently specific. (Doc. No. 132 at 11-16.) Therefore, he urges the Court to suppress the evidence seized pursuant to the allegedly defective warrant. The Court will examine these arguments.

Probable cause for the issuance of a warrant is found where, under the totality of the circumstances, "there is a fair probability that . . . evidence of a crime will be found in a particular place. Illinois v. Gates, 462 U.S 213, 238 (1983). "[P]robable cause can be, and often is, inferred by considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide the fruits of his crime." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (internal citations

omitted) (internal quotations omitted).  Upon a court challenge to a probable cause determination, courts apply a deferential standard of review.  <u>United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents</u>, 307 F.3d 137, 146 (3d Cir. 2002).  This means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."  <u>Id.</u> at 147 (quoting <u>United States v. Jones</u>, 994 F.2d 1051, 1054 (3d Cir. 1993).  The question before the Court is not whether probable cause actually existed, but instead whether there was "a substantial basis for finding probable cause."  <u>Id.</u> (internal quotations omitted)

Upon review of the affidavit, the Court finds that there was clearly a substantial basis in the affidavit for the issuing authority to conclude there was probable cause.  There were first-hand observations from an informant: the affidavit detailed that the informant had frequently purchased marijuana from "Knuckles" over the last two years, and, in the last 72 hours, had purchased marijuana from him at 314 S. George St, where the informant believed Defendant lived.  (Doc. No. 131-2.)  The informant identified a photo of Defendant Ramsey as "Knuckles."  (<u>Id.</u>)  The informant further indicated that he had spotted additional quantities of marijuana at the residence that he believed were intended for sale.  (<u>Id.</u>)

Defendant argues that the warrant had insufficient probable cause because it lacks details bolstering the informant's liability.  Contrary to Defendant's assertion, the affidavit strongly backs up the reliability of the informant in that it indicates that he had recently given information to officers that led to an arrest for cocaine distribution,[1] and, more generally, that the informant

---

[1] Defendant takes issue with the fact that although the informant gave information leading to a cocaine distribution arrest, "the affidavit contains no information that he/she had given any information in the past that led to any arrest for . . . marijuana." (Doc. No. 132 at 13).

5

has given other information officers believe to be true based on independent knowledge.² See United States v. Pearson, 181 Fed. App'x 195, 195 (3d Cir. 2006) (finding an informant reliable where the warrant application set forth that the informant provided accurate tips in the past, with the information resulting in arrests).

Further, despite Defendant's contention that Detective Fenstermacher sought the warrant without corroboration of the tip, the affidavit indicates Fenstermacher did take steps to corroborate the information. He checked PennDOT records, which revealed that 314 S. George St. was the residence of Bordonada, Ramsey's girlfriend. (Doc. No. 131-2.) He also confirmed through a criminal history check that Defendant has a related conviction, having pled guilty to a drug distribution offense in 2000. (Id.) See United States v. Stearn, 597 F.3d 540, 557 (3d Cir. 2010) (upholding probable cause determination where police corroborated the address of the defendant as well as corroborating that the subject of the warrant had prior arrests for "a crime of the same general nature"). In light of these steps, the Court finds that further corroboration was not necessary. See United States v. Woods, 254 F. App'x 889, 892 (3d Cir. 2007) (finding less need for elaborate corroboration where "evidence supporting the affidavit came from a reliable

---

The Court finds no basis to conclude that the distinction between marijuana distribution and cocaine distribution weakens the finding of probable cause or the reliability of the informant, given that both crimes are drug distribution, offenses of the same "general nature." See Stearn at 557.

² Defendant argues that the lack of additional detail regarding these prior tips by the informant means that the affidavit fails to adequately establish the informant's reliability, but the Court finds the affidavit more than sufficient in that regard. See United States v. Williams, 3 F.3d 69, 72 (3d Cir. 1993) ("Even where the information tendered consisted solely of the uncorroborated report of an anonymous informer, probable cause would normally be found to exist where a law enforcement officer was able to say that the informant had provided reliable information in other matters.")

6

informant who personally witnessed the illegal activity").

Moreover, the affidavit further corroborates its basis for probable cause by detailing what Fenstermacher uncovered about Defendant from other officers, which complemented the information provided by the informant. It cites Detective Nadzom, who knew "Knuckles" to refer to Defendant and knew that he was involved in marijuana distribution. (Doc. No. 131-2.) It additionally cites Pennsylvania State Trooper Chris Keppel, who is also familiar with Ramsey and with "his reputation of being involved with marijuana distribution in the York City area." (Id.) This evidence of a suspect's reputation is strongly probative in a probable cause determination, and, contrary to Defendant's assertion, is not "minimally probative." See United States v. Harris, 403 U.S. 573, 582-583 (1971) ("We cannot conclude that a policeman's knowledge of a suspect's reputation[,] something that policemen frequently know . . . is not a practical consideration of everyday life upon which an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip.").

Finally, to the extent Defendant specifically attacks the affidavit for lacking more detail concerning the following: previous information provided by the informant (such as whether he had ever provided information that did not lead to an arrest), Defendant's 2000 arrest, Detective Nadzom and Trooper Keppel's belief that Defendant had a reputation for marijuana distribution, and what the informant observed at 314 S. George St., the Court notes that its duty is to "focus not on what information an affidavit does not include . . . but rather on the information it does contain." Hodge, 246 F.3d at 308 n.1. See also United States v. Conley, 4 F.3d 1200, 1207-08 (3d Cir. 1993) ("Affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place

7

in this area."). Viewing the affidavit under the totality of the circumstances, the Court finds there was a substantial basis to issue the warrant, and the Court will not disturb that finding.

  **B.**  **Particularity of the warrant**

Defendant also argues that even if probable cause did exist to issue the search warrant, the warrant was a "general warrant" that failed to describe the items to be seized, other than marijuana, with sufficient particularity, and thus all items seized, other than marijuana, must be suppressed. (Doc. No. 132 at 17-21.) Specifically, Defendant argues that the clauses ordering seizure of "documentary evidence of, or proceeds from, the distribution, manufacture or possession of controlled substances" and "any paraphernalia associated with controlled substance use or distribution" completely fail to describe the items to be seized with the requisite particularity necessary to withstand a Fourth Amendment challenge. (Id.)

 The Fourth Amendment to the United States Constitution provides: "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Am. IV. This prohibits the use of general warrants. A general warrant is a warrant that "authorizes a general exploratory rummaging in a person's belongings." Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d at 149.

Affidavits and warrants should be "tested by courts in a commonsense and realistic fashion." United States v. Christine, 687 F.2d 749, 760 (3d Cir. 1982). "The use of generic classifications in a warrant is [sufficient] to delineate the categories of items to be seized when, due to the circumstances of the investigation, a more precise description is not feasible." United

8

States v. Atwell, 289 F. Supp. 2d 629, 635 (W.D. Pa. 2003) (citing Christine, 687 F.2d at 760). "When an entire, discrete body of evidence is described, the naming of every component of that body is mere surplusage." United States v. Kepner, 843 F.2d 755, 763 (3d Cir. 1988)

On review, the Court finds that the warrant is not so lacking in specificity as to render it a general warrant in violation of the Fourth Amendment.[3] Although police had probable cause to believe Defendant was engaged in criminal behavior, it could not know exactly what documents and information existed providing evidence of those crimes. See United States v. Rankin, 442 F. Supp. 2d 225, 230 (W.D. Pa. 2006). See also United States v. Janus Indus., 48 F.3d 1548, 1554 (10th Cir. 1995) ("The type of criminal activity under investigation in the present case - a drug paraphernalia business - makes it difficult to list with great particularity the precise items desired to be seized which evidence such activity."). Further, although broad categories are stated in the warrant, it strips the officers of discretion in that it limits the items to be seized to only those that constitute evidence of drug trafficking. See Conley, 4 F.3d at 1208 ("Read as a whole, the search warrant allows the seizure of items indicative of an illegal gambling operation. Since the warrant limits the search to items related to an illegal gambling operation, there is sufficient specificity, satisfying the particularity requirement of the Fourth Amendment.").

---

[3] In support of his argument that the warrant in the present case is an unconstitutional general warrant, Defendant cites United States v. Leary, 846 F.2d 592 (10th Cir. 1988) and United States v. Fucillo, 808 F.2d 173 (1st Cir. 1987). These are readily distinguishable in that each Court highlighted the availability of additional information and limiting factors, specific to each investigation, that would have served to narrow the focus and scope of the warrant and to protect the defendant's rights. Leary, 846 F.2d at 604-605; Fucillo, 808 F.2d at 176-177. Here, there is no showing by Defendant, nor does the Court find, any such necessary information at the officer's disposal that would have served to more narrowly tailor the search warrant in this manner.

Moreover, despite Defendant's assertion the phrase "paraphernalia" was impermissibly broad, the warrant did not need to further define paraphernalia. This is consistent with other courts that have found that the use of "paraphernalia" in a warrant is sufficiently particular. See United States v. Mann, 389 F.3d 869, 878 (9th Cir. 2004) (upholding a warrant as sufficiently particular which authorized the seizure of "any dangerous drugs and drug paraphernalia, or any other items which are contraband/evidence/fruits of the crime/instrumentalities or articles used in the commission of the crimes" and which did not further describe what constituted paraphernalia); United States v. Moore, 149 F.3d 773, 783 (8th Cir. 1998) ("Nor was the warrant's reference to 'drug paraphernalia' impermissibly broad or vague. In the context of a search for marijuana, use of 'paraphernalia' was sufficiently definite to make a violation of Fourth Amendment rights highly unlikely.") (citations omitted) (internal quotations omitted).

The warrant's use of the phrase "documentary evidence," despite containing no further elaboration, is also in line with warrants that have been found constitutionally sound. See United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982) (noting that the clause of the warrant authorizing the seizure of "all other documents, papers, instrumentalities and fruits of the crime" was "not in the nature of a general warrant"); United States v. Santarelli, 778 F.2d 609 (1st Cir. 1981) (upholding warrant which authorized seizure of "all property constituting evidence" of the stated crimes under investigation). Because the Court finds the warrant to search 314 S. George St. was not unconstitutionally general or overbroad, the Court will not suppress the evidence on those grounds.

### C. Items seized beyond the scope of the warrant

Finally, Defendant's counsel suggests that should the Court not find the warrant

unconstitutionally broad, the Court should nevertheless consider suppressing certain pieces of evidence as falling outside of the scope of the warrant. (Doc. No. 143 at 7-8; Transcript at 36:4-20.) This challenge appears to relate to the following items seized: (1) documents relating to the Latin Kings organization, (2) cell phones, and (3) medical records relating to Defendant's girlfriend, Bordonada, and her children.

"A government agent has discovered evidence within the scope of the search allowed by the warrant if the agent's search fits within the literal terms of the warrant." United States v. Menon, 24 F.3d 550, 560 (3d Cir. 1994). "When a search requires review of a large collection of items, such as papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." United States v. Stabile, 633 F.3d 219, 234 (3d Cir. 2011) (citations omitted) (internal quotations omitted). In executing a search warrant, officers are "required to interpret it, and they are not obliged to interpret it narrowly." United States v. Stiver, 9 F.3d 298, 302 (3d Cir. 1993).

Police officers seized a large number of documents relating to the Latin Kings organization, which was known to the executing officers as being involved in the distribution of illegal drugs. This included Latin Kings bylaws, documents relating to the hierarchy of the group, photographs of members in Latin Kings attire, and correspondence between Latin Kings members, some of which was in Spanish.[4] Pennsylvania State Police Trooper Shawn Wolfe,

---

[4] At the hearing, Defendant's counsel appeared to take issue with the executing officers seizing documents in Spanish, even though no Spanish-speaking individuals interpreted the documents at the scene. (Transcript at 23:23-25, 24:1-15.) The seizure of foreign language documents is measured by a reasonableness standard. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d at 153. Here, Trooper Wolfe testified that they have no Spanish-speaking individuals active with them on a daily basis, and had no Spanish-speaking individuals present during the execution of the warrant. (Transcript at 23:23-

11

who was a party to the execution of the warrant, testified that he had ample training and knowledge regarding the Latin Kings organization and their involvement in marijuana distribution at the time the items were seized. (Transcript at 21:20-25, 22:1-7, 26:8-25.) Therefore, it was reasonable for officers to seize these records relating to an organization they knew to be involved in drug trafficking, as they are unassailably "documentary evidence" relating to marijuana distribution, and thus fit the literal terms of the warrant. The Court further finds there is no merit to the argument that these documents were outside the scope of the warrant merely because the warrant did not reference the Latin Kings. Officers are entitled to examine documents that may be within the scope of the warrant to see if they are in fact authorized by the warrant, and the Court finds no basis to require officers to turn a blind eye when encountering documents they understand to fall within the literal terms of the warrant and the scope of the items to be seized. See Stabile, 633 F.3d at 234; see also Menon, 24 F.3d at 562 (noting in a plain view doctrine context that the "apparency of criminality should be measured, at a minimum, by the collective knowledge of the officers on the scene").

     Regarding the cellular phones seized from the residence, the Court finds that these also fall within the scope of the warrant. The United States Court of Appeals for the Third Circuit held that answering the defendant's land-line phone was a proper "search" justified under the portion of the warrant authorizing the search of "all drug paraphernalia." Stiver, 9 F.3d at 302-303. Defendant attempts to distinguish Stiver in that Stiver concerned a land-line, and that the

---

25, 24:1-15.) Thus, the Court finds it was not unreasonable to seize the documents in order to ascertain their nature. See United States v. Phan, 628 F. Supp. 2d 562, 572-573 (M.D. Pa. 2009) (finding seizure of Vietnamese documents unreasonable where Vietnamese interpretor was at the scene but was not given the documents to translate).

affidavit in the present case made no reference to the use of cell phones in Defendant's drug business. The Court does not find that this is a relevant distinction. First, <u>Stiver</u> makes no reference to any specific allegations in the affidavit regarding use of the phone to sell drugs, beyond that drugs were being sold out of the home. Further, the Court finds it is equally logical that a cell phone found at a residence where drugs are sold, as opposed to a land-line phone at such a residence, is drug paraphernalia, particularly in light of Trooper Wolfe's testimony that, in his experience, it is common for drug dealers to use cell phones to aid in the distribution of drugs. (Transcript at 27:8-15.) Moreover, the Court further finds that seizure of the cell phone was reasonably authorized by the clause ordering the seizure of "documentary evidence." <u>See United States v. Aguirre</u>, 664 F.3d 606, 614-15 (5th Cir. 2011) (upholding the seizure of a cell phone as within the scope of a warrant because "as a mode of both spoken and written communication and containing text message and call logs" it was justified as a seizure of "records and documentation of sales or other drug activity").

Lastly, regarding the seizure of medical records of Bordonada's children, the Court notes first that it does not believe these medical records are to be used as evidence in the criminal trial, and therefore does not believe Defendant is asking the Court to suppress them. Rather, Defendant's brief appears to raise the issue as indicative of a lack of good faith on the part of the officers executing the warrant. (Doc. No. 132 at 20-21.) The Court notes that this issue is largely moot, because the Court is not analyzing the good faith exception to the exclusionary rule, as it finds the warrant is constitutionally sound.

Further, assuming <u>arguendo</u> that the seizure of these records was beyond the scope of the warrant and thus unconstitutional, the Court finds this would not warrant suppression of all of

the additional evidence that was properly seized. "Blanket suppression of all evidence seized is required if the executing officers flagrantly disregard the terms of the warrant in bad faith." United States v. Getgen, No. 11-cr-00125, 2011 WL 5826613 (M.D. Pa. Nov. 18, 2011) (citing United States v. Am. Investors of Pittsburgh, Inc., 879 F.2d 1087, 1104 (3d Cir. 1989)). Trooper Wolfe testified that he believed the records related to Bordonada and her children were properly seized because they established the residence and identity of those at the target residence. (Transcript at 24:16-25, 25:1-17.) Therefore, even if this seizure was outside the scope of the warrant, the Court nevertheless finds Wolfe's good faith belief in the necessity of these documents does not amount to "flagrant disregard" of the terms of the warrant, and therefore the seizure of these additional documents is insufficient to impose the "substantial social costs" that come with application of the exclusionary rule. Leon, 468 U.S. at 907. See Am. Investors of Pittsburgh, 879 F.2d at 1107 (finding no "flagrant disregard" of the terms of the warrant where police conduct in seizing items not within the warrant's scope did not overreach such that it rendered the otherwise valid warrant general, and police conduct did not rise to "an abusive level").

      **D.**      **Good faith exception to the exclusionary rule**

Lastly, because the Court finds the warrant and its execution were constitutionally sound, there is no need for the Court to address whether the good faith exception to the exclusionary rule applies. See United States v. Pearson, 181 Fed. App'x 192, 195 (3d Cir. 2006).

**IV.**      **CONCLUSION**

The Court finds that the warrant was supported by probable cause, and described with sufficient particularity the items to be seized. Defendant has not raised any other grounds that

14

would support suppression. Accordingly, the Court will deny Defendant's motion to suppress (Doc. No. 131). An order consistent with this memorandum follows.